UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DENISE B.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 1:21-cv-9794
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Denise B. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On November 19, 2018, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since June 2, 2016. R. 91, 107, 165–71. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

initially and upon reconsideration. R. 115–22. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 123–37. Administrative Law Judge ("ALJ") Nicholas Cerulli held a hearing on June 1, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 36–77. In a decision dated September 30, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 2, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 19, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 4, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[3] On that same day, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

>record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 2, 2016, her alleged disability onset date, and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, carpal tunnel syndrome, fibromyalgia, mixed connective tissue disease, ankylosing spondylitis, ulcerative colitis, obesity, and major depressive disorder. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–23.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 23–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a billing clerk. R. 28–29.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a mail sorter, a microfilm mounter, and sealing machine operator—existed in the national economy and could be performed by Plaintiff. R. 29–30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 2, 2016, her alleged disability onset date, through the date of the decision. R. 30.

Plaintiff disagrees with the ALJ's findings at steps four and five in addition to challenging the constitutionality of the appointment of the Acting Commissioner; she asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further

proceedings. *Plaintiff's Memorandum of Law,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 12. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11.

**IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE**

Plaintiff treated with Stephen Raphael, M.D., her primary care physician, at least since 2017, sometimes more than once a month. R. 332–40, 479–552, 558–60, 589–95, 619. Plaintiff's prescribed medication included Gabapentin, Cymbalta, Alprazolam, Xanax, and Oxycodone. R. 87, 103, 187, 295, 332–40, 341, 380, 589–97.

On May 14, 2020, Dr. Raphael completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Medical Source Statement of Patient's Ability to Perform Work-Related Physical Activities." R. 598–99. In that form, Dr. Raphael opined that Plaintiff could not walk a city block without resting or experiencing severe pain and that she could continuously sit or stand for only five minutes at a time and then must lie down after sitting or standing. R. 598. Dr. Raphael further opined that Plaintiff could sit and stand/walk for a total of less than two hours in an eight-hour workday (with normal breaks). *Id.* According to Dr. Raphael, Plaintiff would need to take more than ten unscheduled breaks in an average workday, each lasting one or more hours, before returning to work. *Id.* Dr. Raphael explained that Plaintiff's need for these breaks was the result of her daytime sleep attacks, chronic fatigue, adverse effects of medication, pain, and muscle spasms. *Id.* Dr. Raphael also opined that Plaintiff could never lift and carry any weight in a competitive work situation. *Id.* Plaintiff could not use either hand for repetitive action such as simple grasping, pushing, pulling, or fine manipulation, nor could she use her feet for repetitive

movements such as in operating foot controls. R. 599. Plaintiff could occasionally bend, but could not stoop, squat, crawl, climb, or reach above shoulder level. *Id*. Furthermore, Plaintiff would likely be absent from work more than five days a month and her symptoms would constantly interfere with the attention and concentration needed to perform even simple work tasks during a typical workday. *Id*.

On that same day, Dr. Raphael also completed a two-page, multiple-choice form entitled, "Clinical Assessment of Pain." R. 600–01. Asked to characterize the significance of Plaintiff's pain, Dr. Raphael circled the response: "Pain is profound and intractable; it virtually incapacitates this individual." R. 600. Addressing the impact of physical activity on the degree of Plaintiff's pain, Dr. Raphael chose the following response: "Increase of pain to such a degree as to require increased medication for pain or substantial amounts of bed rest." *Id*. Asked to what extent Plaintiff's prescribed medication can be expected to affect her, Dr. Raphael circled this answer: "Medication will place severe limitation on the patient's ability to perform even the most simple every day tasks." *Id*. As to the extent that pain would affect Plaintiff's ability to perform routine tasks on a productive basis (*i.e.*, perform at production levels expected by most employers) on a sustained basis, over an eight-hour day for a number of weeks without frequent absences, Dr. Raphael circled the following two answers: "Pain can be expected to be severe and to limit effectiveness due to distraction, inattentiveness, drowsiness, etc." and "Patient will be totally restricted and thus unable to function at a productive level or work." R. 600–01. Asked about the long-term prospects of recovery in regard to Plaintiff's level of pain, Dr. Raphael selected the following answer: "Little improvement is likely in this case; in fact, the pain is likely to <u>increase</u> with time." R. 601 (emphasis in original). Addressing the extent to which treatment served to lessen Plaintiff's pain, Dr. Raphael responded as follows: "Treatments of this kind have

9

had no appreciable impact or have only briefly altered the level of pain that this patient experiences." *Id*. Asked to estimate the frequency that Plaintiff's symptoms interfere with attention and concentration needed to perform even simple work tasks during a typical workday, Dr. Raphael indicated that they would "constantly" interfere. *Id*.

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Raphael's opinion, which resulted in a flawed RFC. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 10–17; *Plaintiff's Reply Brief*, ECF No. 12, pp. 1–3. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[4] As previously noted, Plaintiff's claim was protectively filed on November 19, 2018.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b). "Specifically, the ALJ must explain how he [or she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to— explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the instant case, at step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent handling, fingering, and feeling; and frequent exposure to hazards, such as unprotected heights and moving machinery. The claimant could perform unskilled work, involving routine and repetitive tasks; occasional changes in the work setting; no quota or production based work, but rather goal oriented work; and occasional interaction with members of the public.

R. 23. In reaching this determination, the ALJ found, *inter alia*, that Dr. Raphael's opinion was not persuasive, reasoning as follows:

> The claimant's primary care physician, Stephan Raphael, M.D., completed a medical opinion form in May 2020. He concluded that the claimant could sit and stand for 5 minutes at one time and then lie down. She could sit, stand and walk for less than 2 hours in an 8-hour day. She would need more than 10 unscheduled breaks for 1 to 2 hours at a time. She had daytime sleep attacks, chronic fatigue, pain, and muscle spasms. She could never lift and carry any weight. She could not use her hands or feet for any activities. She could occasionally bend, but never

> stoop, squat, crawl, climb or reach. She could have no exposure to any environmental conditions, including hazards or driving. She would be absent more than 5 days a month and constantly have symptoms interfering with simple work tasks. Her pain and medications were virtually incapacitating and she would have no improvement (Exhibit B16F).
>
> Dr. Raphael's opinion is not persuasive. Although he has a longitudinal treating history with the claimant and personal knowledge of her functioning and her impairments, his overly restrictive statements are not supported in the contemporaneous treating record. His treating notes show only that the claimant sought routine medication refills and routine follow up visits. Further, Dr. Raphael merely checked off boxes and circled answers on a form without providing any supporting explanation. He did not provide any objective medical findings to support his overly restrictive conclusions. He did not offer any explanation for the claimant's needed breaks or absences during the work month. His restricted range of sedentary work combined with breaks and absences is not supported anywhere in the treating record, which essentially shows routine follow up and medication management.

R. 27.

Plaintiff challenges this evaluation of Dr. Raphael's opinion, arguing that substantial evidence in the record supports this doctor's opinion. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 13–17 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 12, pp. 1–3 (citations omitted). Plaintiff specifically argues that objective record evidence, including, *inter alia*, positive muscle spasms, support Dr. Raphael's opinion that Plaintiff needed more than ten unscheduled breaks throughout the course of a workday. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 13, 16. For her part, the Acting Commissioner contends that the ALJ properly concluded that Dr. Raphael's opinion was not persuasive because that physician's treating notes show only routine medication refills and routine follow up visits; she also contends that Dr. Raphael's opinion was inconsistent with the overall record evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11, p. 23. The Acting Commissioner further contends that the ALJ properly rejected Dr. Raphael's opinion because it consisted of a check-box form without

13

any explanation or objective medical findings to support that physician's restrictive findings. *Id*. at 23–24.

The Acting Commissioner's arguments are not well taken. While it is true that "check box" forms unaccompanied by any explanation constitute weak evidence, *see J.D. ex rel. Martinez v. Comm'r Soc. Sec.*, 629 F. App'x 232, 233–34 (3d Cir. 2015), the ALJ failed to acknowledge that Dr. Raphael's contemporaneous treatment notes from his May 14, 2020, examination which reflect, *inter alia*, that Plaintiff "went to Shore Hosp[.]" R. 594. The record also specifically reflects that Plaintiff went to the emergency department of Shore Medical Center where she was diagnosed with edema and "[s]pasm of cervical paraspinous muscle[,]" R. 604; *see also* R. 605–18, a fact that the ALJ specifically acknowledged earlier in his written decision. R. 26 ("She was seen in the emergency room in April 2020 for cervical spasms[.]"). As previously discussed, Dr. Raphael opined in the typed form that Plaintiff's symptoms, including, *inter alia*, her muscle spasms, caused her need for more than ten unscheduled breaks to rest during an average workday. R. 598. Although Dr. Raphael did not repeat the medical details regarding muscle spasms in support of this limitation, R. 598, this objective evidence could serve to support the doctor's opinion that Plaintiff symptoms, including, *inter alia*, her muscle spasms, require these unscheduled breaks. The ALJ's statements that Dr. Raphael "did not offer any explanation for the claimant's needed breaks" and that this physician's "restricted range of sedentary work combined with breaks . . . is not supported anywhere in the treating record[,]" R. 27, therefore overlooks or mischaracterizes the medical record in this regard. Notably, substantial evidence does not support the ALJ's decision when it relies on a mischaracterization of the evidence. *See Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the

wrong reason.'") (quoting *Morales*, 225 F.3d at 317); *cf. DeJesus v. Kijakazi*, No. 20-CV-06115-RAL, 2022 WL 1062914, at *10 (E.D. Pa. Apr. 8, 2022) ("By dismissing Dr. Kingry's opinion through conclusory statements, mischaracterizations of record evidence, lay opinions, and failure to resolve contradictory evidence, the ALJ's conclusion does not survive scrutiny even under the less restrictive 2017 regulations. A remand is warranted."); *Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."). The ALJ's error in this regard cannot be viewed as harmless where, as here, the vocational expert testified that, generally, only three breaks are permitted during the course of the workday. R. 73.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[5] Moreover, remand is appropriate even if, upon further examination

---

[5] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Raphael's opinion and the RFC determination, the Court does not consider those claims. However, the Court notes that this Court has rejected one of Plaintiff's counsel's arguments, *i.e.,* the constitutionality of the appointment of the Acting Commissioner. *See Rebecca L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-13848, 2022 WL 3025908, at *13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff benefits, and nothing commands us to vacate the decisions below on that ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.") (internal quotation marks and citations omitted). This Court has also previously rejected similar constitutional challenges to the Acting Commissioner's appointment raised by other counsel. *See John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12 (D.N.J. Aug. 25, 2022) ("The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid."); *Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11

of Dr. Raphael's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings.

---

(D.N.J. Aug. 9, 2022) (same); *Daniel M. v. Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted.").

Finally, although not raised by the Plaintiff, the Court notes that it would be helpful on remand if the ALJ were to clarify why he limited Plaintiff to occasional interaction with the public but was silent about interaction with supervisors and coworkers, especially after finding that Plaintiff was moderately limited in her ability to interact with others, R. 22, and after stating that the record evidence "suggests that the claimant is *more limited* than found by the state agency and would be more appropriately limited . . . with additional mental limitations." R. 28 (emphasis added); *see also* 87 (reflecting state agency finding that Plaintiff was moderately limited in interacting with the general public and moderately limited in accepting instructions and responding to criticism from supervisors), 102 (same). *See Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others.").

Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

VI.   **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 26, 2023                         *s/Norah McCann King*
                                              NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE